Nancy GRUNDMEYER, Appellee,

v.

WEYERHAEUSER COMPANY,
Appellant.

No. 01–0849.

Supreme Court of Iowa.

July 17, 2002.

Rehearing Denied Aug. 27, 2002.

Richard C. Garberson and Jennifer E. Rinden of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellant.

Robert C. Andres of Felton, Martin & Andres, P.C., Waterloo, for appellee.

LAVORATO, Chief Justice.

Weyerhaeuser Company (Weyerhaeuser) appeals from the district court's ruling on judicial review reversing the chief deputy workers' compensation commissioner's (commissioner) decision denying Nancy Grundmeyer's claim for an alleged occupational hearing loss under Iowa Code chapter 85B (1995). We must determine whether the district court erred in its interpretation and application of Iowa Code sections 85B.11 and 85B.8. If we determine the court was in error, we must then determine whether substantial evidence supports the commissioner's finding that Grundmeyer failed to prove Weyerhaeuser is liable for any occupational hearing loss.

We conclude the district court did err in its interpretation of the two Iowa Code sections and that substantial evidence supports the commissioner's finding that Grundmeyer failed to prove Weyerhaeuser is liable for any occupational hearing loss. Accordingly, we reverse and remand for an order affirming the commissioner's decision.

## I. Background Facts and Proceedings.

In August 1966, Grundmeyer began working part-time at Mead Container (Mead), a box factory in Waterloo, Iowa. On May 27, 1969, her status changed to full-time. On August 1, 1987, Weyerhaeuser purchased Mead. According to the purchase agreement, Weyerhaeuser purchased Mead's assets with the exception of some stated assets, which included "all rights of Seller in its corporate name." In addition, Weyerhaeuser assumed Mead's liabilities with the exception of some stated liabilities, including workers' compensation liabilities.

At the time of the ownership change, Grundmeyer's duties remained the same. Her job site, rate of pay, and the work rules remained the same. Grundmeyer never received written notice that her employment relationship was terminated. She was unaware that any employee relationship had been terminated.

In August 1987, Grundmeyer filled out an employment application for Weyerhaeuser, as did all other former Mead employees. However, Weyerhaeuser considered

May 27, 1969, as her hired date for purposes of seniority and pension benefits. Grundmeyer retired from Weyerhaeuser on August 31, 1996.

When Grundmeyer began working for Mead, she had no hearing problems. She held several different positions throughout her employment at the box factory. She testified that each of these positions involved exposure to high levels of noise. Noise survey reports from 1987 through 1996 support this testimony.

For at least the first fifteen years of her employment at the box factory, Grundmeyer wore no hearing protection. She first became aware of a hearing problem in the mid–1980s. She described the onset of the problem as "gradual," rather than sudden. In 1984, a hearing test showed that Grundmeyer had a hearing loss. At that time, a doctor told her to "stay away from noise and wear hearing protection." She wore a hearing aid for a short period of time in 1989.

Mead began providing hearing protection for its employees in the mid–1980s. From that point on, Grundmeyer wore hearing protection. She began with foam plugs and later switched to molded plugs. She testified she wore the hearing protection "religiously" from the time Mead provided the protection until she retired from Weyerhaeuser. Occasionally, she would loosen the hearing protection in her right ear for brief periods of time so she could hear instructions.

In 1988, Weyerhaeuser had Grundmeyer's hearing tested. The test showed a 15.3 percent hearing loss. In 1995, a few months before her retirement, she had another hearing exam. That exam showed a hearing loss of 42.2 percent. In 1998, another hearing exam indicated her hearing loss had worsened since her retirement. That exam showed a 53.8 percent hearing loss.

Grundmeyer's father had hearing problems beginning at age sixty, and he eventually wore a hearing aid. Her maternal grandfather had hearing problems in his later years, and he wore a hearing aid beginning in his late seventies.

On June 30, 1997, Grundmeyer filed a petition for workers' compensation benefits, alleging that she sustained a hearing loss as a result of exposure to occupational noise. She further alleged that the injury occurred on August 31, 1996, the date of her retirement from Weyerhaeuser.

A deputy workers' compensation commissioner heard the case on September 15, 1999. The deputy heard testimony from Grundmeyer and others, and received reports from three experts.

Richard Tyler, an audiologist with a Ph.D. and Grundmeyer's expert, examined Grundmeyer. Based on his examination, which included a detailed medical and work history, Dr. Tyler concluded that

> the most probable cause of hearing loss is from work at the "box" plants. Furthermore, I conclude that significant hearing loss occurred while she worked for Weyerhaeuser and that this was a result of noise exposure. This condition is very unlikely to improve.

E.L. Grandon, M.D. was one of Weyerhaeuser's experts. He also examined Grundmeyer. Based on this examination and audiograms from 1988 until 1995, this expert concluded that Grundmeyer's hearing loss

> was primarily the result of her first fifteen years of employment in a noisy box factory, and that her residual loss was the result of the critical incident view, indicating that whether or not she retired in 1988, or whether she continued working in 1996, that her hearing would have gradually deteriorated.

The second expert for Weyerhaeuser, Joseph Sataloff, M.D., only reviewed Grundmeyer's records for his opinion. He concurred with Dr. Grandon's opinion that "if Ms. Grundmeyer experienced any occupational hearing loss, it was long before 1986." Dr. Sataloff also opined that Grundmeyer's "hearing loss is chiefly of a hereditary, progressive nerve etiology rather than occupational noise exposure."

The deputy issued his decision a week following the hearing. He concluded that Grundmeyer had failed to establish that an occupational hearing loss pursuant to Iowa Code chapter 85B occurred on August 31, 1996. She failed to do so because (1) the contract of acquisition between Mead and Weyerhaeuser "makes it clear that [Weyerhaeuser] is not responsible" for claims for hearing loss incurred prior to August 1, 1987, and (2) Grundmeyer "failed to establish that her hearing loss is causally connected to work for Weyerhaeuser Company from August 1, 1987, through her separation date of August 31, 1996." Grundmeyer appealed to the commissioner.

On June 29, 2000, the commissioner filed an appeal decision affirming the deputy's decision. The commissioner concluded that Grundmeyer proved that she had been exposed to excessive noise levels at work and that the exposure had resulted in a hearing loss. However, interpreting Iowa Code sections 85B.11 and 85B.8, the commissioner concluded that Weyerhaeuser was not liable for any hearing loss incurred before August 1, 1987, when it purchased some of Mead's assets and assumed some of its liabilities.

In addition, the commissioner concluded Grundmeyer failed to show any of her hearing loss after August 1, 1987 was caused by exposure to excessive noise while she was employed by Weyerhaeuser. In reaching this conclusion, the commis-

sioner gave greater weight to the opinions of Weyerhaeuser's two experts. In the course of his decision, the commissioner—contrary to the deputy—concluded that the asset purchase agreement could not operate to deprive Grundmeyer of her rights under the workers' compensation law, citing Iowa Code section 85.18. That provision provides that "[n]o contract, rule, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this chapter except as herein provided." Iowa Code § 85.18.

On July 19, 2000, Grundmeyer filed a petition for judicial review in the district court. On April 19, 2001, the district court filed a ruling reversing the commissioner's decision.

The district court noted that according to section 85B.11, an employer is liable "for an occupational hearing loss to which the *employment* has contributed. . . . ." Iowa Code § 85B.11(emphasis added). The court also noted that section 85B.8 allows a claimant to file a claim "six months after separation from the *employment* in which the employee was exposed to excessive noise levels." Iowa Code § 85B.8 (emphasis added). The court interpreted the word "employment" in both provisions to mean *all* employment. Therefore, the court concluded, a change in employers did not prevent Weyerhaeuser from being liable for all of the hearing loss which Grundmeyer sustained while working at the box factory. It was the district court's position that the legislature intentionally selected the language just cited in sections 85B.11 and 85B.8 to apply to situations where there are successor employers.

## II. Issues.

Weyerhaeuser contends the district court erred in its interpretation and appli-

cation of Iowa Code sections 85B.11 and 85B.8. In addition, Weyerhaeuser contends substantial evidence supports the commissioner's finding that Weyerhaeuser is not liable for any occupational hearing loss that Grundmeyer may have suffered, because no loss attributable to excessive noise at the box factory occurred after August 1, 1987, the date of the purchase.

### III. Scope of Review.

■ Iowa Code chapter 17A governs review of this workers' compensation decision. *See* Iowa Code § 85B.14. The district court, exercising its power of judicial review under Iowa Code section 17A.19(8), acts in an appellate capacity to correct errors of law on the part of the agency. *Heartland Express, Inc. v. Terry*, 631 N.W.2d 260, 265 (Iowa 2001). The court may affirm the agency action or remand to the agency for further proceedings. Iowa Code § 17A.19(8). The court shall reverse, modify, or grant any other appropriate relief from the agency action if substantial rights of the petitioner have been prejudiced because of such action. *Id.*

In reviewing the district court's decision, we apply the standards of Iowa Code section 17A.19(8) to determine whether our conclusions are the same as those of the district court. *IBP, Inc. v. Al–Gharib*, 604 N.W.2d 621, 627 (Iowa 2000). If they are the same we affirm; otherwise we reverse. *Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 14 (Iowa 1993).

To the extent the question presented concerns an interpretation of Iowa's workers' compensation act, the question is one of law. *Id.; see also* Iowa Code § 17A.19(8)(a) (providing for appropriate relief where the substantial rights of the petitioner have been prejudiced because the agency's action is "[i]n violation of . . . statutory provisions") and (e) (providing for appropriate relief where the substan-

tial rights of the petitioner have been "[a]ffected by other error of law").

■ To the extent the question presented is one of the sufficiency of the evidence to support the agency's decision, we may grant appropriate relief where the rights of the petitioner have been prejudiced because the agency action "[i]n a contested case [is] unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole." Iowa Code § 17A.19(8)(f). Evidence is substantial if a reasonable person would find the evidence adequate to reach the same conclusion. *Ehteshamfar v. UTA Engineered Sys. Div.*, 555 N.W.2d 450, 452 (Iowa 1996). An agency's action does not lack substantial evidence simply because a reasonable person could draw inconsistent conclusions from the same evidence. *Id.*

### IV. Whether the District Court Erred in its Interpretation and Application of Iowa Code Sections 85B.11 and 85B.8.

**A. Applicable statutes.** This issue turns on our interpretation of Iowa Code sections 85B.11 and 85B.8. Section 85B.11 provides:

An employer is liable, as provided in this chapter and subject to the provisions of chapter 85, for an occupational hearing loss *to which the employment has contributed,* but if previous hearing loss, whether occupational or not, is established by an audiometric examination or other competent evidence, whether or not the employee was exposed to excessive noise level within six months preceding the test, the employer is not liable for the previous loss, nor is the employer liable for a loss for which compensation has previously been paid or awarded. The employer is liable only for the difference between the percent of occupational hearing loss determined

as of the date of the audiometric examination used to determine occupational hearing loss and the percentage of loss established by the pre-employment audiometric examination. An amount paid to an employee for occupational hearing loss by any other employer shall be credited against compensation payable by an employer for the hearing loss. An employee shall not receive in the aggregate greater compensation from all employers for occupational hearing loss than that provided in this section for total occupational hearing loss. A payment shall not be made to an employee unless the employee has worked in excessive noise level employment for a total period of at least ninety days for the employer from whom compensation is claimed.

(Emphasis added.)

Iowa Code section 85B.8 provides, in pertinent part:

A claim for occupational hearing loss due to excessive noise levels may be filed six months *after separation from the employment* in which the employee was exposed to excessive noise levels. The date of the injury shall be the date of the occurrence of any one of the following events:

1. Transfer from excessive noise level employment by an employer.

2. Retirement.

3. Termination of the employer-employee relationship.

. . . .

(Emphasis added.)

**B. The parties' contentions.** Predictably, the parties' contentions follow the reasoning of the commissioner and the district court, respectively. Weyerhaeuser argues that section 85B.11 provides an affirmative defense to employers and demonstrates the legislature's intent to hold an employer harmless for an employee's preexisting hearing loss. Weyerhaeuser agrees with the commissioner that pursuant to section 85B.11, an employer is not liable for hearing loss incurred under a prior employer if the loss has already been compensated or if the prior loss has been documented. In addition, pursuant to section 85B.8, the termination of the employer-employee relationship triggers the applicable filing period for an occupational hearing-loss claim. Therefore, Weyerhaeuser concludes, Grundmeyer's "date of injury," for purposes of filing a claim for hearing loss incurred before Weyerhaeuser's acquisition of the box factory, was August 1, 1987, the date on which her relationship with Mead ended.

In addition, Weyerhaeuser contends the district court erred in applying the "last injurious exposure" rule of Iowa Code section 85A.10 to this case. *See* Iowa Code § 85A.10 (employer in whose employment the employee was last injuriously exposed to the hazards of an occupational disease is liable for the compensation). Weyerhaeuser argues that the legislature's failure to include such a provision in chapter 85B shows its intent not to apply such a rule in occupational hearing-loss cases.

Grundmeyer contends that pursuant to section 85B.11, an employer is liable for an occupational hearing loss to which "the employment" has contributed. Grundmeyer points out that section 85B.11 does not limit an employer's liability to a loss to which "the employer" has contributed. Therefore, Grundmeyer concludes, a successor employer is "responsible for the occupational hearing loss to which the employment contributed, regardless of whether some of the employment was performed for a different owner of the employment."

Grundmeyer further contends that no change in "employment" occurred in this case when Weyerhaeuser took over the

box factory. To support this contention, Grundmeyer points to several facts on which the district court relied: there was no change in location of employment, Grundmeyer's job and job duties remained the same, her pay remained the same, neither her employment nor the employment of any fellow employees was terminated, there were no changes in employee policy or procedures, and Grundmeyer's seniority date continued from her first day of work for Mead.

Finally, Grundmeyer contends the purpose and policy behind our workers' compensation law—to benefit workers—support an *interpretation of chapter 85B that* would render the successor employer liable for the entire occupational hearing loss.

**C. Analysis.** For reasons that follow, we think Weyerhaeuser has the better argument.

■■■ "Workers' compensation law is statutory and certain well-recognized principles control its construction." *Ehteshamfar*, 555 N.W.2d at 453. The ultimate goal "is to ascertain and give effect to the intention of the legislature." *John Deere Dubuque Works v. Weyant*, 442 N.W.2d 101, 104 (Iowa 1989). We seek a reasonable interpretation that will best effectuate the purpose of the statute and avoid absurd results. *Id.* We consider all parts of the statute together without attributing undue importance to any single or isolated portion. *Id.* When we are reviewing the commissioner's interpretation of the statutes governing the agency, we defer to the agency's expertise, but reserve for ourselves the final interpretation of the law. *IBP, Inc. v. Harker*, 633 N.W.2d 322, 325 (Iowa 2001).

■■■ Because the primary purpose of the workers' compensation statute is to benefit the worker, we liberally construe the statute in favor of the worker. *Id.* However, there is one very important limitation on this rule of construction: We liberally construe the statute *insofar as statutory requirements permit. Id.*

In *Muscatine County v. Morrison*, we had the first opportunity to interpret Iowa Code chapter 85B. 409 N.W.2d 685, 687 (Iowa 1987). We observed that the legislature enacted Iowa Code chapter 85B, the Occupational Hearing Act, "to make it easier for a claimant to prove the compensability of hearing loss attributable to prolonged exposure to noise at work." *Id.* Before passage of the Act, workers suffering such a loss faced "nearly insurmountable procedural and substantive obstacles" in their attempts to recover benefits. *Id.*

However, the Act does provide some limitations. For example, an employer is *not* liable if a hearing loss incurred under a prior employer has been compensated, or if the prior hearing loss has been documented. Iowa Code § 85B.11. The Act provides a method by which an employer can limit its liability for gradual hearing loss by establishing previous hearing impairment with a pre-employment audiometric examination. *Id.* In addition, we recognized in *Morrison* that section 85B.11 "differs from the occupational disease statute [Iowa Code section 85A.10] that provides the last employer is liable for all compensation payable for an occupational disease." *Morrison*, 409 N.W.2d at 688 n. 2.

Given these limitations, we doubt the legislature intended the language "to which the employment has contributed" in section 85B.11 and the language "after the separation from the employment" in section 85B.8 to have the broad meaning that the district court gave such language. In effect, the district court's interpretation would make the last employer liable for all compensation payable for an occupational hearing loss. If the legislature had intend-

ed such a result, it could have easily said so, as it did for occupational diseases.

Additionally, we believe the district court's application of the successor in interest liability theory was not supported by the evidence. Three events may constitute "the date of injury" and trigger the filing of a claim: "1. [t]ransfer from excessive noise exposure employment by an employer[,] 2. [r]etirement[,][or] 3. [t]ermination of the employer-employee relationship." Iowa Code § 85B.8.

Here, Grundmeyer was not transferred from an excessive noise environment. She did, however, retire. The date of injury as to Weyerhaeuser is therefore her retirement date, August 31, 1996.

As the commissioner noted, the issue narrows to whether Grundmeyer had an earlier date of injury in 1987, when the ownership of the box factory changed hands. On this question, the commissioner found two facts significant. First, Mead employees were required to reapply for their positions if they wished to work for Weyerhaeuser. Second, although none of Grundmeyer's work conditions changed, her employer did change. The commissioner found that this "is not a case where an employer merely changes its corporate name. A new employer and a new employer-employee relationship occurred in 1987."

Without expressly saying so, the commissioner made a finding that Weyerhaeuser was not a successor in interest to Mead. A successor in interest has been defined as

[o]ne who follows another in ownership or control of property. In order to be a "successor in interest," a party must continue to retain the same rights as [the] original owner without [a] change in ownership and there must be [a] change in form only and not in substance.... In [the] case of corporations,

the term ordinarily indicates statutory succession as, for instance, when [a] corporation changes its name but retains the same property.

*Black's Law Dictionary* 1431–32 (6th ed.1990) (quoting *City of New York v. Turnpike Development Corp.*, 36 Misc.2d 704, 233 N.Y.S.2d 887, 890 (N.Y.Sup.Ct. 1962)).

We think substantial evidence supports the commissioner's finding that Weyerhaeuser was not a successor in interest to Mead and for that reason a new employer-employee relationship occurred in 1987. The result might have been different had there been merely a change in name as the commissioner suggested. Or had there been a merger where the surviving corporation succeeds to both the rights and liabilities of the constituent corporation. *Cf. LTV Steel Co. v. Workers' Compensation Appeal Bd.*, 562 Pa. 205, 754 A.2d 666, 676–77 (2000) (holding that substantial evidence supported workers' compensation judge's decision that company, which acquired business through merger, was a successor in interest and not a new employer and, thus, was the sole employer and responsible for all of claimant's hearing loss).

Here, Weyerhaeuser *purchased* some of Mead's assets and assumed only *limited* liabilities. In these circumstances, we have said there is no successor-in-interest liability. *DeLapp v. Xtraman, Inc.*, 417 N.W.2d 219, 220 (Iowa 1987) ("The general rule is that where one company sells or otherwise transfers all its assets to another company, the purchasing company is not liable for the debts and liabilities of the transferor.").

We have also recognized four exceptions to this rule: (1) there is an agreement to assume such debts and liabilities of the selling corporation; (2) there is a consoli-

dation (or merger) of the two corporations;. (3) the purchasing corporation is a mere continuation of the selling corporation; or (4) the transaction was fraudulent. *Arthur Elevator Co. v. Grove,* 236 N.W.2d 383, 391–92 (Iowa 1975). There is no record evidence to support exceptions 1, 2, or 4. As to exception 3—the purchasing corporation is a mere continuation of the selling corporation—some facts tend to support the exception. For example, Grundmeyer's job site, rate of pay, and work rules remained the same, and her hired date for purposes of seniority and pension benefits remained the same. However, the controlling factor is whether the transferor continues to own and control the new corporation. *Id.* at 392–93. There was no record evidence that the seller—Mead—owned and controlled Weyerhaeuser. The commissioner's implicit finding that Weyerhaeuser was not a successor in interest constituted a finding that none of the four exceptions applied. Substantial evidence supports this finding.

Weyerhaeuser is therefore liable only for any hearing loss that resulted *after* August 1, 1987, the date the company purchased Mead's assets. That brings us to the final issue in this case.

**V. Whether Substantial Evidence Supports the Commissioner's Finding that Grundmeyer Suffered No Occupational Hearing Loss After August 1, 1987.**

The district court did not reach this issue because it determined that Weyerhaeuser was liable for all of Grundmeyer's hearing loss.

 The commissioner found that Grundmeyer failed to prove that her hearing loss after August 1, 1987, was caused by her exposure to excessive noise while she was employed by Weyerhaeuser. We think there was substantial evidence to support this finding.

 A claimant must prove by a preponderance of the evidence that the injury is a proximate cause of the claimed disability. *Sherman v. Pella Corp.,* 576 N.W.2d 312, 321 (Iowa 1998). Expert testimony is ordinarily necessary to establish a causal connection between the injury and the disability for which benefits are sought. *Id.* As to expert testimony,

> [t]he commissioner must consider [such] testimony together with all other evidence introduced bearing on the causal connection between the injury and the disability. The commissioner, as the fact finder, determines the weight to be given to any expert testimony. Such weight depends on the accuracy of the facts relied upon by the expert and other surrounding circumstances. The commissioner may accept or reject the expert opinion in whole or in part.

*Id.* (citations omitted).

Dr. Sataloff believed Grundmeyer's hearing loss occurring after 1987 was not noise-induced. He based this on the reduced discrimination ability in both ears. He noted that this kind of hearing loss is "never" due to noise. According to Dr. Sataloff, reduced discrimination is caused by a genetic or hereditary etiology that affects the auditory neurons, as opposed to the outer hair cells that are damaged by noise exposure.

Dr. Grandon opined that most occupational hearing loss occurs during the first ten to fifteen years of noise exposure, which in this case would have been while Grundmeyer was employed by Mead. As to the residual loss, he attributed it to the "critical incident view," or the after-effects of the initial exposure. He indicated that a small percentage of hearing loss each year after such exposure would be expected whether or not the claimant continued to work in a noisy environment.

Both doctors stated there was no causal connection between Grundmeyer's hearing loss and her work activities after 1987.

In contrast, Dr. Tyler—Grundmeyer's expert—concluded that such a connection did exist. The commissioner discounted Dr. Tyler's testimony because it was "based more on a process of eliminating other factors" and because he "[did] not address the loss of discrimination that Dr. Sataloff [found] significant." Additionally, the commissioner was critical of Dr. Tyler's testimony because he "merely note[d] a progressive loss of hearing [from 1988 to 1998] and [did] not address whether that loss might be an expected residual loss from earlier exposure, [or] was the result of new exposure."

Finally, the commissioner found the "presence and use of hearing protection devices during the Weyerhaeuser employment, although not determinative, corroborates the conclusion that any hearing loss during those years was residual to the prior exposure and not attributable to a new exposure."

Substantial evidence supports all of these findings. Although the evidence might have supported a conclusion different from what the commissioner reached, we cannot say the conclusion the commissioner did reach was not supported by substantial evidence. *See id.* at 316 ("The question is not whether evidence might support a different finding, but whether the evidence supports the findings actually made.") (citation omitted).

## VI. Disposition.

In sum, we conclude there was substantial evidence to support the commissioner's finding that (1) the employer-employee relationship between Grundmeyer and Mead terminated in August 1987, when Weyerhaeuser took over the box factory, and (2) Weyerhaeuser became her new employer at that time. Therefore, Grundmeyer had no claim for any hearing loss against Weyerhaeuser before August 1987. The district court erred in concluding otherwise.

Additionally, there was substantial evidence to support the commissioner's conclusion that Grundmeyer failed to prove her hearing loss after August 1987 was caused by her exposure to excessive noise while employed by Weyerhaeuser.

For these reasons, we reverse the district court judgment and remand for an order affirming the ruling of the commissioner.

**REVERSED AND REMANDED WITH DIRECTIONS.**

All justices concur except CARTER, J., who takes no part.