IN THE SUPREME COURT OF IOWA

 No. 141 / 04-1911

 Filed February 17, 2006

JERRY MEYER,

 Appellee,

vs.

IBP, INC.,

 Appellant.
________________________________________________________________________
 On review from the Iowa Court of Appeals.

 Appeal from the Iowa District Court for Black Hawk County, Bruce J.
Zager, Judge.

 Employer appeals from a district court judgment reversing workers’
compensation commissioner’s decision to deny benefits to injured employee.
DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND
REMANDED.

 James Drury II, Dakota Dunes, South Dakota, for appellant.

 Robert Rush of Rush & Nicholson, P.L.C., Cedar Rapids, for appellee.

CADY, Justice.
 In this appeal from a decision by the workers’ compensation
commissioner denying benefits to the claimant, the parties dispute whether
the injury arose out of and in the course of employment. The district
court reversed the commissioner’s decision, and the court of appeals
reversed the district court. We vacate the decision of the court of
appeals, reverse the district court judgment, and remand to the
commissioner for further proceedings.
 I. Background Facts and Proceedings
 Jerry Meyer obtained employment at an IBP plant in Waterloo through a
staffing agency called Advance Services, Inc. (ASI). ASI placed Meyer at
IBP on October 10, 2000. Meyer was assigned a job that required him to cut
the tongues from hog heads delivered on a conveyor belt and to place the
tongues on another conveyor belt. This job is known as “popping tongues.”
Meyer remained an employee of ASI until he completed a sixty-day
probationary period.
 Meyer first experienced pain in his hand at work during this
probationary period, when he was still employed by ASI. He experienced
swelling in his fingers and soreness in his wrist. He notified IBP,
visited the health department at IBP, and was told it was “break-in pain.”
Meyer continued working with no restrictions or other actions taken. His
employment with ASI concluded on Friday, December 15, 2000.
 On Monday, December 18, 2000, IBP hired Meyer as a regular employee to
perform the same job he performed during his probationary period. Meyer
worked a full shift on December 18, was off work on December 19 and 20, and
worked a full shift on December 21. On December 22, while cutting tongues,
he felt a popping or snapping sensation and “a shot of pain go right
straight up [his] middle finger.” His left hand then went numb. Meyer
stopped working and went to the health department at IBP. The IBP nurse
applied ice to Meyer’s hand and kept him in the health center for the
remaining forty-five minutes of his shift. Meyer returned to work December
26 and continued to experience swelling in his hand and arm. He notified
the health department and was told to go to the hospital.
 James Haag, a physician’s assistant at the hospital, noted a flexor
strain in Meyer’s left middle finger and a median nerve injury in his left
wrist. Haag restricted Meyer from use of his left hand, fitted him with a
brace, and prescribed physical therapy and pain medication. Meyer returned
to work, and IBP placed him on light-duty work to accommodate his
restriction. Meyer’s pain persisted, and he returned to Haag two days
later on December 28. Haag adjusted Meyer’s medication but did not modify
his restriction. On January 25, 2001, Meyer underwent an electromyogram
(EMG) test by Dr. Brian Sires. The test revealed a diagnosis of carpal
tunnel syndrome of the left wrist and left ulnar neuropathy at the elbow.
Haag referred Meyer to Dr. Thomas Gorsche, an orthopedic surgeon. Dr.
Gorsche suggested cubital-tunnel-release and nerve-transposition surgery as
a treatment option for Meyer, but Meyer wanted to take some time to
consider the surgery.
 Meanwhile, Meyer quit his job at IBP in March 2001. In addition, on
April 13, a workers’ compensation examiner for IBP wrote a letter to Dr.
Gorsche. In the letter, the examiner asked Dr. Gorsche for his opinion on
whether Meyer’s condition could be attributed to “2 days of work activities
for IBP.” Dr. Gorsche responded in the negative.
 Meyer was then referred to Dr. Gary Knudson, another orthopedic
surgeon. Dr. Knudson also diagnosed Meyer with ulnar neuropathy of the
left elbow and probable carpal tunnel syndrome of the left wrist.
Dr. Knudson opined:

 I believe he is suffering from an overuse injury to his left upper
 extremity precipitated by his work at IBP this past fall and early
 winter. . . .

 Certainly he was only on the job a few months before beginning
 significant symptomatology, but he may have had a predisposition to
 develop this symptomatology which became manifested after significant
 repetitive use of his arms at IBP.

Dr. Knudson agreed with Dr. Gorsche that surgery was appropriate.
 Following the surgery, Meyer was off work until September 4, 2001.
On September 10, 2001, Dr. Knudson performed endoscopic-carpal-tunnel-
release surgery on Meyer. Dr. Knudson released Meyer to regular duty on
October 15, 2001.
 IBP’s workers’ compensation claims examiner wrote Dr. Knudson a
letter on January 14, 2002, asking for his opinion as to whether Meyer’s
condition was “causally related to 2 days of work activities for IBP.”
Dr. Knudson replied in the negative.
 On May 6, 2002, Meyer saw Dr. Farid Manshadi, a physiatrist, for an
independent medical examination, at the request of his attorney.
Dr. Manshadi opined that Meyer suffered “cumulative work injury that arose
out of and during the course of his work at IBP which resulted in left
ulnar nerve neuropathy at the cubital tunnel as well as left carpal tunnel
syndrome.” Further, Dr. Manshadi opined that Meyer suffered “a permanent
partial impairment of his left upper extremity as a result of the
cumulative work injury” of ten percent, which translated to a six-percent
whole-body impairment.
 Meyer sought workers’ compensation benefits from IBP under Iowa Code
chapter 85 (2001), and penalty benefits under section 86.13, by filing a
petition for arbitration in June 2001. A hearing was eventually held. In
the written decision, the deputy commissioner described the five issues
presented for resolution. The first was “whether claimant received an
injury that arose out of [and] in the course of his employment with IBP,
Inc.”
 In resolving this issue, the deputy commissioner relied exclusively on
the uncontradicted medical testimony “that the two days claimant performed
work as an IBP employee prior to December 22, 2000 would not, of itself,
have produced his left upper extremity hand and elbow conditions.” The
deputy commissioner also found there was no medical testimony showing that
“claimant’s work incident of December 22, 2000 could, of itself, have
either caused or materially aggravated claimant’s carpal and cubital tunnel
syndromes.” Based solely on this evidence, the deputy commissioner
concluded Meyer failed to establish “an injury on December 22, 2000, that
arose out of and in the course of his employment with IBP, Inc.”
Therefore, the deputy decided the other issues in the claim did not need to
be addressed. The commissioner affirmed and adopted the deputy
commissioner’s decision.
 Meyer sought judicial review. He claimed all the evidence in the
record supported a finding that his injury manifested itself on
December 22, 2002 and arose out of and in the course of employment, and the
commissioner erred by relying on the medical testimony that utilized an
improper causation standard.
 The district court reversed the decision of the commissioner. It
found the conclusion reached by the commissioner that Meyer failed to
establish “a compensable injury on December 22, 2000” was not supported by
substantial evidence. Instead, the district court determined substantial
evidence supported a conclusion that Meyer established an injury that
occurred on December 22, 2000, and that it arose out of and in the course
of his employment with IBP. The court was persuaded that the circumstances
on December 22, 2000, and those that both preceded and followed the event,
could only mean the injury occurred on December 22, 2000.
 IBP filed a notice of appeal and raised a single issue—whether the
district court erred in reversing the commissioner’s decision “that Meyer
failed to establish that he sustained an injury that arose out of and in
the course of his employment” with IBP, Inc. IBP claimed substantial
evidence supported the commissioner’s ruling. In the section of its
appellate brief addressing the scope of appellate review, IBP stated:

 The issue in this appeal has been properly preserved for review
 as the issue of whether this injury arose out of and in the course of
 Meyer’s employment with IBP, [I]nc. has been the central issue both in
 the Workers’ Compensation Commissioner’s decision and the Ruling on
 Judicial Review.

 We transferred the case to the court of appeals. It determined
substantial evidence supported the decision of the commissioner. It found
the medical testimony presented at the hearing constituted substantial
evidence to support the agency’s conclusion that Meyer’s injury was not
causally related to his two days of employment with IBP. In addition, the
court of appeals stated that Meyer had “pointed to no evidence, medical or
otherwise,” that the incident on December 22, 2000 was a manifestation of
Meyer’s injury.
 Meyer sought further review, claiming the court of appeals “ignored
established Supreme Court standards as to when a cumulative injury
‘manifests.’ ” IBP responded that any reliance by Meyer on the cumulative-
injury rule was misplaced in this case because the issue on appeal was
whether substantial evidence supported the agency’s decision that Meyer’s
injury did not arise out of and in the course of employment. IBP further
argued that even assuming the cumulative-injury rule was applicable, the
rule would support a finding that the injury manifested itself prior to the
time Meyer commenced his employment with IBP. We granted further review.

 II. Standards of Review

 The Iowa Administrative Procedure Act, Iowa Code chapter 17A, governs
the scope of our review in workers’ compensation cases. Iowa Code § 86.26.
 Under the Act, we may only interfere with the commissioner’s decision if
it is erroneous under one of the grounds enumerated in the statute, and a
party’s substantial rights have been prejudiced. Id. § 17A.19(10).
 The issue on appeal has been framed in the context of whether
substantial evidence supports the commissioner’s determination that Meyer’s
injury did not arise out of and in the course of employment with IBP.
However, in fully considering the parameters of our review, we observe that
the issue whether an injury arose out of and in the course of employment
presents a mixed question of law and fact. Hawk v. Jim Hawk Chevrolet-
Buick, Inc., 282 N.W.2d 84, 87 (Iowa 1979). A question of fact is
presented by the operative events that give rise to the injury. Id.
Unless the events are undisputed, the commissioner must resolve the dispute
and determine the facts leading to the injury. Id. A question of law is
then presented because the commissioner must further determine whether the
facts, as determined, support a conclusion that the injury “arose out of
and in the course of employment,” under our workers’ compensation statute.
Id. (citing Cedar Rapids Cmty. Sch. Dist. v. Cady, 278 N.W.2d 298, 298-99
(Iowa 1979); McClure v. Union et al., Counties, 188 N.W.2d 283, 284 (Iowa
1971)).
 On judicial review, courts are bound by the commissioner’s resolution
of the first question—finding the operative facts from the evidence
presented—if supported by substantial evidence in the record as a whole.
Excel Corp. v. Smithart, 654 N.W.2d 891, 896 (Iowa 2002) (citing IBP, Inc.
v. Harpole, 621 N.W.2d 410, 414 (Iowa 2001)); accord Iowa Code §
17A.19.10(f). In other words, the question on appeal is not whether the
evidence supports a different finding than the finding made by the
commissioner, but whether the evidence “supports the findings actually
made.” St. Luke’s Hosp. v. Gray, 604 N.W.2d 646, 649 (Iowa 2000) (citing
Kiesecker v. Webster City Custom Meats, Inc., 528 N.W.2d 109, 110 (Iowa
1995)). On the other hand, the application of the law to the facts—the
second question—takes a different approach and can be affected by other
grounds of error such as erroneous interpretation of law; irrational
reasoning; failure to consider relevant facts; or irrational, illogical, or
wholly unjustifiable application of law to the facts. See Iowa Code
§ 17A.19(10)(c), (i), (j), (m). We allocate some degree of discretion in
our review of this question, but not the breadth of discretion given to the
findings of fact. See Arthur E. Bonfield, Amendments to Iowa
Administrative Procedure Act (1998) Chapter 17A, Code of Iowa (House File
667 As Adopted) 70 (1998) (“[W]hen an agency is delegated discretion in
applying a provision of law to specified facts the scope of review
appropriately applied by courts must be deferential because the legislature
decided that the agency expertness justifies vesting primary jurisdiction
over that matter in the discretion of the agency rather than in the
courts.”); see also Clark v. Vicorp Rests., Inc., 696 N.W.2d 596, 604 (Iowa
2005) (“Because factual determinations are within the discretion of the
agency, so is its application of law to the facts.”); Mycogen Seeds v.
Sands, 686 N.W.2d 457, 465 (Iowa 2004) (“[G]iven that factual
determinations in workers’ compensation cases are ‘clearly vested by a
provision of law in the discretion of the agency,’ it follows that
application of the law to those facts is likewise ‘vested by a provision of
law in the discretion of the agency.’” (citing Iowa Code § 17A.19(10)(f))).
 When the agency exercises its discretion based on an erroneous
interpretation of the law, we are not bound by those “legal conclusions but
may correct misapplications of the law.” Stroup v. Reno, 530 N.W.2d 441,
443 (Iowa 1995).
 These different approaches to our review of mixed questions of law and
fact make it essential for counsel to search for and pinpoint the precise
claim of error on appeal. If the claim of error lies with the agency’s
findings of fact, the proper question on review is whether substantial
evidence supports those findings of fact. If the findings of fact are not
challenged, but the claim of error lies with the agency’s interpretation of
the law, the question on review is whether the agency’s interpretation was
erroneous, and we may substitute our interpretation for the agency’s.
Clark, 696 N.W.2d at 604 (citing Iowa Code § 17A.19(10)(c), (11)(b);
Mycogen Seeds, 686 N.W.2d at 464). Still, if there is no challenge to the
agency’s findings of fact or interpretation of the law, but the claim of
error lies with the ultimate conclusion reached, then the challenge is to
the agency’s application of the law to the facts, and the question on
review is whether the agency abused its discretion by, for example,
employing wholly irrational reasoning or ignoring important and relevant
evidence. See Iowa Code § 17A.19(10)(i), (j). In sum, when an agency
decision on appeal involves mixed questions of law and fact, care must be
taken to articulate the proper inquiry for review instead of lumping the
fact, law, and application questions together within the umbrella of a
substantial-evidence issue.
 In this case, the commissioner found from the evidence that Meyer had
a cumulative-trauma injury, but concluded the injury did not arise out of
and in the course of his employment with IBP because the limited time Meyer
worked for IBP (two days) was not the cause, by itself, of the cumulative-
trauma injury. Certainly, there was substantial evidence in the record to
support the finding that the two days Meyer worked as a IBP employee did
not, by itself, cause the injury. These facts are not in dispute.
Instead, the actual issue is whether these facts support the commissioner’s
conclusion that Meyer’s injury did not arise out and in the course of
employment under the applicable legal standards.[1] Accordingly, our task
on judicial review is to consider if the commissioner either made an
erroneous interpretation of the law, or otherwise committed error in
applying the law to the facts.

 III. Governing Law

 Our workers’ compensation statute provides coverage for “all personal
injuries sustained by an employee arising out of and in the course of the
employment.” Iowa Code § 85.3(1); accord Meade v. Ries, 642 N.W.2d 237,
243 (Iowa 2002) (citing Miedema v. Dial Corp., 551 N.W.2d 309, 311 (Iowa
1996)). This statutory coverage formula gives rise to four basic
requirements: (1) the claimant suffered a “personal injury,” (2) the
claimant and the respondent had an employer-employee relationship, (3) the
injury arose out of the employment, and (4) the injury arose in the course
of the employment. See Freeman v. Luppes Transp. Co., 227 N.W.2d 143, 148
(Iowa 1975).[2] The failure of any one requirement results in a denial of
a claim for benefits. Yet, all four elements are woven together by the
common threads of injury and employment. The first two elements establish
the existence of the injury within the ambit of the workers’ compensation
statute, and the third and fourth requirements work hand in hand to
establish a connection between the injury and the work. See 1 Arthur
Larson & Lex K. Larson, Larson’s Workers’ Compensation Law § 3.01, at 3-3
(2005) [hereinafter Larson]. Nevertheless, each element has its own
purpose in the resolution of a workers’ compensation claim, and the failure
to follow a separate analysis of each element can lead to confusion and
potential error.
 With respect to the first requirement of an injury, it is sufficient
in this case to recognize that carpal tunnel syndrome is an injury under
the workers’ compensation statute. Noble v. Lamoni Prods., 512 N.W.2d 290,
294 (Iowa 1994). See generally Jay M. Zitter, Workers’ Compensation:
Recovery for Carpal Tunnel Syndrome, 14 A.L.R.5th 1, 11-12 (1993) (“Carpal
tunnel syndrome is a condition produced by compression of the median nerve
as it travels through the carpal tunnel at the wrist, resulting in symptoms
of tingling, pain, and weakness in the wrist and in the thumb and first
three fingers of the hand. . . . [T]he cause which has been the focus of
considerable recent attention is repetitive minor trauma in the modern
workplace. Many assembly line tasks . . . involve thousands of repetitive
hand and wrist motions, such as slicing, pushing, or pressing, often
without sufficient break or resting time.”). It is known as a repetitive-
trauma injury, or cumulative injury, because it normally develops over
time. Id.
 The injury element also includes a component of “reasonable
definiteness in time.” 3 Larson § 50.01, at 50-2. The reason for
requiring a definite date of injury is that a number of important questions
often cannot be answered without considering the date of injury, including
“which employer and carrier is on the risk.” Herrera v. IBP, Inc., 633
N.W.2d 284, 287 (Iowa 2001) (quoting Thilges v. Snap-On Tools Corp., 528
N.W.2d 614, 618 (Iowa 1995)); accord 3 Larson § 50.01, at 50-2. In other
words, the time of injury must normally be known to properly consider the
other elements of a claim for compensation. For example, the relevant time
period to establish the second element—existence of an employer-employee
relationship—is the time of injury. See Freeman, 277 N.W.2d at 148 (worker
must establish “employer-employee relationship at the time of the injury”
(citing Hassebroch v. Weaver Constr. Co., 246 Iowa 622, 67 N.W.2d 549
(1954))). Similarly, it would be difficult to properly analyze the third
element—the injury arose in the course of employment—without first
determining the time of the injury. Under either element, an employer is
not “on the risk” for an injury sustained prior to the time the employee
commenced work for the employer.[3] See, e.g., Grundmeyer v. Weyerhaeuser
Co., 649 N.W.2d 744, 752-53 (Iowa 2002) (no compensation from new employer
for hearing loss that occurred before employment commenced).
 We use the “cumulative-injury rule” to establish the date of injury
in repetitive-trauma cases. McKeever Custom Cabinets v. Smith, 379 N.W.2d
368, 374 (Iowa 1985); accord Herrera, 633 N.W.2d at 287; 3 Larson § 50.01,
at 50-2. The date of the repetitive-trauma injury under the cumulative-
injury rule “is the date on which disability manifests itself.” 3 Larson
§ 50.05, at 50-11. “ ‘Manifestation’ is best characterized as ‘the date on
which both the fact of the injury and the causal relationship of the injury
to the claimant’s employment would have become plainly apparent to a
reasonable person.’ ” Oscar Mayer Foods Corp. v. Tasler, 483 N.W.2d 824,
829 (Iowa 1992) (quoting Peoria County Belwood Nursing Home v. Indus.
Comm’n, 505 N.E.2d 1026, 1029 (Ill. 1987)); accord Excel Corp., 654 N.W.2d
at 896; Herrera, 633 N.W.2d at 288. It is a fact-based determination in
which the commissioner is entitled to substantial latitude. Oscar Mayer
Food Corp., 483 N.W.2d at 829 (citation omitted). Factors to be considered
in determining when an injury manifests itself include “absence from work
because of inability to perform, the point at which medical care is
received, or others, none of which is necessarily dispositive.” Id. at
830.
 The second requirement means that an employee-employer relationship
must exist “at the time of the injury.” Freeman, 277 N.W.2d at 148. There
can be myriad issues relating to the requirement of an employee-employer
relationship that may ultimately support a denial of compensation, but none
is relevant to this case. See Iowa Code § 85.61(2) (defining “employer”
and providing specific inclusions); id. § 85.61(11)-(13) (defining
“employee” and providing specific inclusions and exclusions). See
generally 3 Larson chs. 60-68, at 60-1 to 68-14 (devoted to employment
status and the rules governing exceptions such as independent contractors).
 Instead, the relevant inquiry in this case is whether the employment
relationship existed at the time of the injury.
 Once a worker is found to have suffered an injury at the time of the
employment relationship, the third and fourth requirements must be
considered to decide if the injury “ar[ose] out of and in the course of the
employment.” Iowa Code § 85.3(1). “Few groups of statutory words in the
history of law have had to bear the weight of such a mountain of
interpretation as has been heaped upon this slender foundation.” 1 Larson
§ 3.01, at 3-3. We have contributed to this cordillera of law by our own
interpretation of this venerable language:

 An injury “arises out of” the employment if a causal connection
 exists between the employment and the injury. The injury arises “in
 the course of” employment when the injury and the employment coincide
 as to time, place, and circumstances. Both tests must be satisfied
 for an injury to be deemed compensable.

Meade, 642 N.W.2d at 243-44 (citations omitted).
 Thus, the “course of employment” element is satisfied when the injury
“takes place within the period of the employment, at a place where the
employee reasonably may be, and while the employee is fulfilling work
duties or engaged in doing something incidental thereto.” 1 Larson at
12.1. In other words, the injury and the employment must “coincide as to
time, place, and circumstances.” Thayer v. State, 653 N.W.2d 595, 600
(Iowa 2002) (citing Meade, 642 N.W.2d at 243-44). This element examines
the work period on the date of the injury, the place of the injury, and the
activities the worker was engaged in at the time of the injury. See
generally 3 Larson chs. 12-17, at 12-1 to 17.41 (devoted to principles such
as the “going and coming” rule, dual-purpose rule, and deviation rule).
 On the other hand, the “arising out of” employment element has a
different focus. It means there must be a “casual relationship between the
employment and the injury.” Koehler Elec. v. Wills, 608 N.W.2d 1, 3 (Iowa
2000). Although we have attached a causation label to this element from
time to time, it has a special definition in workers’ compensation law.
The element requires that the injury be a natural incident of the work,
meaning the injury must be a “ ‘rational consequence of the hazard
connected with the employment.’ ” Id. at 3-4 (quoting 2800 Corp. v.
Fernandez, 528 N.W.2d 124, 128 (Iowa 1995)). “ ‘In other words, the injury
must not have coincidentally occurred while at work, but must in some way
be caused by or related to the working environment or the conditions of
. . . employment.’ ” Id. at 3 (quoting Miedema, 551 N.W.2d at 311); see 1
Larson at 9-1 (“Injuries arising out of risks or conditions personal to the
claimant do not arise out of the employment unless the employment
contributes to the risk or aggravates the injury.”).
 In applying this arising-out-of element, it is important not to draw
in the causation standards applicable to tort law.[4] The concept of
proximate or legal cause applicable to tort law is misplaced in determining
work-connectedness under workers’ compensation law. 1 Larson § 3.06, at 3-
7.
 Larson provides a lengthy explanation:

 It is instantly apparent that “arising out of the employment” does not
 mean exactly the same thing as “legally caused by the employment.” It
 is true, as many courts and writers have said, that “arising” has
 something to do with causal connection; but there are many shades and
 degrees of causal connection, of which “legal” or “proximate” cause is
 only one. Taking the words themselves, one is first struck by the
 fact that in the “arising” phrase the function of the employment is
 passive while in the “caused by” phrase it is active. When one speaks
 of an event “arising out of employment,” the initiative, the moving
 force, is something other than the employment; the employment is
 thought of more as a condition out of which the event arises than as
 the force producing the event in affirmative fashion. In tort law the
 beginning point is always a person’s act, and the act causes certain
 consequences. In worker’s compensation law the beginning point is not
 an act at all; it is a relation or condition or situation—namely,
 employment. No one would suggest that the employer’s only act, the
 act of hiring the employee, is the operative factor from which all
 consequences are to be traced. Thus, at the very outset, it is plain
 that the attempt to make “arising” equivalent to “causation” is
 blocked by the words themselves.

 One is next entitled to ask, if the original draftsmen meant to
 say “caused by the employment,” why did they not do so? The phrase is
 not only shorter than the “arising” phrase, but much more familiar; it
 would have come naturally to any draftsman, unless he or she intended
 to say something different from “caused by.”

 Finally, proximate cause or legal cause is out of place in
 compensation law because, as developed in tort law, it is a concept
 that is itself thoroughly suffused with the idea of fault; that is, it
 is a theory of causation designed to bring about a just result when
 starting from an act containing some element of fault. The primary
 test of legal cause in the Unites States is foreseeability, which is
 the “fundamental basis of the law of negligence.” Therefore, “if the
 harm which has actually occurred is one of the particular risks which
 made the actor’s conduct negligent, it is obviously a consequence for
 which the actor must be held legally responsible.” In other words,
 the essence of the actor’s fault is that, although the consequences of
 his or her conduct were foreseeable, he or she nevertheless carried on
 that line of conduct. The foreseeability of the consequences is an
 inextricable part of the fault-character of the act.

 But what relevance has foreseeability if one is not interested
 in the culpability of the actor’s conduct? There is nothing in the
 theory of compensation liability that cares whether the employer
 foresaw particular kinds of harm or not. The only criterion is
 connection in fact with the employment, whether it is foreseeable in
 advance, or apparent only in retrospect. This criterion cannot in any
 logical sense be made to depend on foreseeability. . . .

Id. at 3-7 to 3-8; accord State Farm Mut. Auto. Ins. Co. v. Rains, 715
S.W.2d 232, 236 (Ky. 1986) (noting court’s rejection of “utilizing the
concepts of ‘proximate cause, or foreseeability’ as tort law concepts not
applicable to workers’ compensation cases” in determining whether an injury
arose out of employment (citing Corken v. Corken Steel Prods., Inc., 385
S.W.2d 949, 950 (Ky. 1964))); Gibberd ex rel. Gibberd v. Control Data
Corp., 424 N.W.2d 776, 780 (Minn. 1988) (“[A] causal connection—not
necessarily in the proximate cause sense—must exist between the injury and
the employment.” (Citations omitted; emphasis added.)); Steinberg v. S.D.
Dep’t of Military & Veterans Affairs, 607 N.W.2d 596, 602 (S.D. 2000)
(“ ‘[A]rising out of and in the course of employment’ does not require that
the latter be the proximate cause of injury. If the legislature had meant
that, it would have said so.” (quoting Anderson v. Hotel Cataract, 17
N.W.2d 913, 916 (S.D. 1945))).
 IV. Analysis
 With this governing law in mind, we return to the decision of the
commissioner. The commissioner had four elements to consider in deciding
the initial issue presented at the hearing: (1) Did Meyer sustain an
injury (injury element)? (2) Did Meyer and IBP have an employer-employee
relationship at the time his injury occurred (employment-status element)?
(3) Was the injury related to the working environment or conditions of the
job (arising-out-of-employment element)? and (4) Did the injury coincide
with the time and place of employment (course-of-employment element)?
Failure of proof of any one of these elements would have taken Meyer’s
claim out of the statutory coverage formula for compensability. In
considering the first element, the commissioner found from the evidence
that Meyer sustained a cumulative-trauma injury. However, the commissioner
skipped the second and fourth elements and proceeded directly to the third
element. The commissioner did not apply the cumulative-injury rule to
decide the date of the injury, or decide that Meyer’s injury manifested
before his employment with IBP commenced. Instead, the commissioner only
addressed the arising-out-of element and found that two days of work for
IBP could not, by itself, have produced Meyer’s injury. The commissioner
found a failure of proof on the arising-out-of element based solely upon
the medical opinions by Drs. Gorsche and Knudson that Meyer’s two days of
work for IBP was not, by itself, the cause of the injury.
 The undisputed evidence in the case revealed that the particular job
performed by Meyer during his two days of employment with IBP was the same
job performed for his prior employer. It involved repetitive hand and arm
motions, conditions that are known to lead to carpal tunnel syndrome or
cumulative-trauma injury. It was undisputed that Meyer suffered this type
of injury. Thus, although Meyer only worked a short time on the job, the
type of injury he sustained was nevertheless a “rational consequence” of a
hazard of the work he performed with IBP. Koehler Elec., 608 N.W.2d at 3.
The type of work he performed placed him at a greater risk of carpal tunnel
syndrome, which meets the arising-out-of employment standard regardless of
the number of days worked. See McIlravy v. N. River Ins. Co., 653 N.W.2d
323, 332 (Iowa 2002) (knee injuries sustained by iron worker while walking
was work-related based on evidence that the nature of the profession placed
the worker at greater risk for knee injuries than other professions). Yet,
the evidence the commissioner relied upon in the written decision reveals
the commissioner utilized a tort-law causation standard that required Meyer
to prove the two days of employment with IBP, by themselves, caused the
injury.
 Under the arising-out-of element decided by the commissioner, Meyer
was only required to “prove that a condition of his employment increased
the risk of injury.” Koehler Elec., 608 N.W.2d at 5; accord Miedema, 551
N.W.2d at 311 (“Miedema fails to establish that use of Dial’s restroom
exposed him to any increased risk of injury. Rather, any risk of back
injury associated with use of Dial’s toilet seems to have been singular to
Miedema and is not causally connected to the conditions of the restroom
facilities.”); 1 Larson § 3.03, at 3-4 (stating that under the increased-
risk doctrine, a test for determining whether an injury arose out of the
employment, “the distinctiveness of the employment risk can be contributed
[to] by the increased quantity of the risk that is qualitatively not
peculiar to the employment”). Thus, Meyer could have had a predisposition
to develop carpal tunnel syndrome prior to beginning his employment with
IBP. Yet, if the injury manifested during his first minute of popping
tongues as an IBP employee, it still would have arisen out of his
employment because his job duties with IBP, as shown by the record,
increased the risk that carpal tunnel syndrome would manifest. See Koehler
Elec., 608 N.W.2d at 5. Accordingly, properly applied to the facts, our
law reveals Meyer satisfied the arising-out-of element as a matter of law.
Contrary to the conclusion of the commissioner, this element does not
support a denial of compensation.
 The error committed by the commissioner also reveals the error
committed by the district court. In our judicial review of workers’
compensation cases, we review the district court decision to decide if our
legal conclusions mirror those reached by the district court. Cargill,
Inc. v. Conley, 620 N.W.2d 496, 500 (Iowa 2000) (citations omitted). The
district court not only found the legal conclusion reached by the
commissioner that the injury did not arise out of and in the course of
employment was not supported by the evidence, but went on to further find
the evidence as a whole satisfied the arising-out-of-and-in-the-course-of-
employment standard as a matter of law. This latter conclusion by the
district court is where error ultimately occurred. In reaching this
conclusion, the district court exceeded the scope of permissible judicial
review of agency decisions by making findings on the course-of-employment
element that the commissioner never made, when the facts in the record
necessary to make the finding supported two reasonable conclusions.
 As revealed by our analysis in this case, the basic issue turns on
whether Meyer’s injury manifested before or after he became an IBP
employee. However, the commissioner never found any facts to support a
conclusion that the injury manifested before or after Meyer became an IBP
employee, and this question cannot be decided on judicial review as a
matter of law because the evidence clearly could support two reasonable
conclusions. We have said that the commissioner commits error by failing
to weigh and consider all of the evidence, and the remedy on judicial
review for this type of error is to remand the case for a decision by the
commissioner on the existing record, not for the district court to find the
facts and make the decision. Armstrong, 382 N.W.2d at 165. The reviewing
court may determine facts as a matter of law only when there is no dispute
in the relevant evidence and reasonable minds could not reach different
inferences from the evidence. Id.
 The record reveals a conflict in the evidence regarding the time when
the injury sustained by Meyer manifested. There is evidence that could
support a finding that the injury occurred before Meyer commenced work for
IBP and there is evidence to support a finding it occurred after he
commenced work for IBP. Thus, remand is necessary for the commissioner to
reevaluate the evidence and decide this question in light of the relevant
law, as well as all other questions that may follow.
 V. Conclusion
 We vacate the decision of the court of appeals. We reverse the
district court judgment and remand the case to the workers’ compensation
commissioner for further proceedings consistent with this opinion.
 DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT
REVERSED AND REMANDED.
-----------------------
 [1]Although a claim of insubstantial evidence is usually used to
challenge findings of fact, we understand how it can be implicated, as in
this case, in a challenge to a legal conclusion. Error occurs when the
commissioner makes a legal conclusion based on facts that are inadequate to
satisfy the governing legal standards. Yet, a claim of insubstantial
evidence to support a legal conclusion does not give rise to the standard
of review applicable to the claim of substantial evidence to support the
factual findings by the commissioner. When the commissioner takes a piece
of evidence and uses it to draw a legal conclusion to improperly deny
compensation, we do not review the conclusion by looking at the record as a
whole to see if there was substantial evidence that could have supported
the ultimate decision, as argued by IBP in this case. Instead, we review
the decision made. If the commissioner fails to consider relevant evidence
in making a conclusion, fails to make the essential findings to support the
legal conclusion, or otherwise commits an error in applying the law to
facts, we remand for a new decision unless it can be made as a matter of
law. See Armstrong v. State of Iowa Bldgs. & Grounds, 382 N.W.2d 161, 165
(Iowa 1986).

 [2]In addition to the requirement of an injury, we have said that our
workers’ compensation act primarily requires the worker to establish: “(1)
an employer-employee relationship at the time of the injury, (2) an injury
arising out of and in the course of employment, and (3) the disability . .
. proximately caused by the injury.” Freeman, 227 N.W.2d at 148 (citations
omitted). Thus, we recognize proximate cause between the disability and
injury is another requirement of compensation, but it is not directly
implicated by section 85.3(1) and is not an issue in this appeal.

 [3]We, of course, recognize certain rules that may impose
responsibility on an employer for conditions that predated the employment
or for the aggravation of prior injuries. See Excel Corp., 654 N.W.2d at
896-900.

 [4]We have on occasion injected the term “proximate cause” into
workers’ compensation cases by stating that the employee must prove that
“the injury is a proximate cause of the claimed disability.” Grundmeyer,
649 N.W.2d at 752 (citing Sherman v. Pella Corp., 576 N.W.2d 312, 321 (Iowa
1998)); see, e.g., Musselman v. Cent. Tel. Co., 261 Iowa 352, 360, 154
N.W.2d 128, 132 (1967) (“proximate contributing cause”). It is accurate to
say an injury must proximately cause the disability, but is not accurate to
say the employment must proximately cause the injury. The injury need only
“arise out of” the employment—a less onerous standard than the proximate-
cause standard from tort law.