# IN THE SUPREME COURT OF IOWA

No. 10–0795

Filed February 10, 2012

**DONALD A. WESTLING**,

Appellant,

vs.

**HORMEL FOODS CORPORATION**,

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Carla T. Schemmel, Judge.

A worker appeals a decision of the workers' compensation commissioner finding that the worker's claimed disability was not caused by a work-related injury. **DECISION OF COURT OF APPEALS AND JUDGMENT OF THE DISTRICT COURT AFFIRMED.**

Mark S. Soldat of Soldat & Parrish-Sams, P.L.C., West Des Moines, for appellant.

Valerie A. Landis of Hopkins & Huebner, P.C., Des Moines, for appellee.

**WIGGINS, Justice.**

In this appeal, we must decide whether the workers' compensation commissioner correctly decided that a worker failed to prove his claimed disability was causally related to a work injury. Because an award for partial permanent disability for an unscheduled injury under Iowa Code section 85.34(2)(*u*) (2005) is determined by industrial disability, rather than by functional impairment, the commissioner used the correct standard to determine the causal relation between the work injury and the alleged disability. Furthermore, substantial evidence supports the commissioner's findings. Thus, we affirm the decision of the court of appeals and the judgment of the district court.

**I. Background Facts and Proceedings.**

At the time of his arbitration hearing, Donald A. Westling was fifty-nine years old. He is a high-school graduate and worked for Hormel Foods Corporation for thirty years and one day before voluntarily retiring on November 24, 2006. On January 5, 2006, Westling experienced a sharp pain in his right shoulder while removing casings from meat products using a strip-out machine. In addition, Westling experienced a burning sensation and could not lift his arms above his head. He continued to experience pain while he worked.

On February 16, Westling saw Dr. Ryan J. Thoreson, who diagnosed his injury as a rotator cuff strain. After physical therapy did not alleviate Westling's pain, Westling saw Dr. Philip A. Deffer, an orthopaedic surgeon, on March 31. After an MRI exam suggested Westling had a partial rotator cuff tear, Dr. Deffer referred Westling to Dr. Jason C. Hough for surgery.

Dr. Hough performed arthroscopic surgery on Westling's right shoulder on July 10. During the surgery, Dr. Hough discovered

significant fraying of the anterior and superior labrum as well as a large spur along the acromion. He also noted inflammation along the subscapularis muscle. Dr. Hough did not discover a rotator cuff tear. Dr. Hough removed the frayed labrum, part of the membrane covering the acromion, the anterior acromion hook to the acromioclavicular joint, and part of the subacromial bursa. He also freed the spur.

One week later at his follow-up appointment, Westling reported that he was "doing quite well." Dr. Hough referred Westling to physical therapy and told him to take four weeks off from work. Westling steadily improved following the surgery, and one month after surgery, Westling reported to his physical therapist that he did not have much pain. In mid-August, Dr. Hough allowed Westling to return to full-duty work for half of each day and light duty for the remainder. In mid-September, Dr. Hough released Westling to full-duty work with no restrictions. Although Westling's condition had improved, he still experienced a burning sensation and pain when he extended his right arm over his head or performed pushing or pulling motions.

On October 12, Dr. Hough wrote to a Hormel representative regarding Westling's shoulder. Dr. Hough expressed his opinion that the surgery did not cause Westling to have a permanent impairment. He wrote,

> In regard to Donald Westling's shoulder, I do not believe that he will have any permanent impairment secondary to his surgical intervention. I believe that he has done quite well and he should not have any impairment secondary to this.

Westling retired on November 24. No doctor advised him to retire, and he did so voluntarily. After retiring, Westling divided his time between Iowa and Florida and did not look for other permanent

employment, although he occasionally painted a house or mowed his neighbor's lawn in exchange for money.

On March 15, 2007, Westling filed a petition with the Iowa workers' compensation commissioner. Westling alleged he suffered the injury to his shoulder while working at Hormel and that "[c]umulatively and gradually, overuse syndrome developed into an impingement syndrome" resulting in permanent disability. Hormel admitted Westling sustained a work-related injury on January 5, 2006, which caused a temporary disability, but disputed that Westling's injury caused a permanent disability.

On April 9, 2008, at Westling's request, Dr. Mary A. Shook performed an independent medical examination of Westling's shoulders. Westling reported to Dr. Shook that his pain level was an eight on a ten-point scale. In her report, Dr. Shook attributed Westling's then-current pain in his right shoulder to arthritis and not overuse. She also opined that any pain in Westling's left shoulder was probably related to arthritis and not stemming from overuse during his employment at Hormel. Dr. Shook explained,

> Review of records referring to the right shoulder indicates arthritis diagnosed at the time of surgery. It is even noted that a rotator cuff tear had healed . . . . Arthritis is also noted in the knees and neck. I suspect arthritis is present in the left shoulder as well. Although Hormel is noted to be a physically demanding workplace, the patient describes a number of jobs he has been assigned to, not the same job over a number of years. Review of records also indicates many months of limited duty or no duty related to injury care and recuperation from surgical procedures . . . . Repetitive motion injury because of work assignments is best diagnosed in relationship to actual tasks performed. Since Mr. Westling retired in November, 2006 there has been no recent repetitive motion at the workplace. Thus I can safely conclude that his current symptoms are NOT from repetitive tasks due to work assignments. Any current exacerbation of

pain in the shoulders would more likely be related to recent use not prior work use. Arthritis causes increased pain and decreased function over time. With a reasonable degree of medical certainty, his current shoulder complaints are due to arthritis, not cumulative trauma.

Using range of motion as the criteria, Dr. Shook evaluated Westling as having two percent whole person impairment for the right shoulder and three percent whole person impairment for the left shoulder, both caused by arthritis and not Westling's work activities. Dr. Shook rated Westling's impairment in accordance with the fifth edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment.*

Following an arbitration hearing in September, the deputy workers' compensation commissioner determined Westling failed to establish "a causal relationship between his January 5, 2006 injury and his claimed permanent disability." The deputy commissioner credited Dr. Hough's opinion that Westling did not have any permanent impairment of his right shoulder because of the surgery and Dr. Shook's opinion that Westling did not have any permanent impairment because of overuse while working for Hormel. On appeal, the commissioner affirmed and adopted the deputy's decision.

Westling sought rehearing, arguing the commissioner needed to decide "whether for the purposes of Iowa Code section 85.34(2), the definition of permanent impairment contained in the A.M.A. *Guides to the Evaluation of Permanent Impairment,* was synonymous with the judicial definition of functional disability." In denying Westling's request for rehearing, the commissioner stated,

> While claimant cites numerous errors alleged in the agency decision, he more particularly cited to the need for the agency to address its definition of impairment. The core of claimant's argument is that it was in error for the agency to

determine he had sustained no permanent impairment despite the surgical procedure of July 10, 2006, a procedure that claimant describes in near-complete detail. Claimant's argument that such a procedure would result in some impairment, however minor, is persuasive.

Nevertheless, the commissioner found that

> [t]he presiding deputy, and the undersigned on appeal, relied upon undisputed medical evidence that claimant's work was not a cause of a permanent bilateral shoulder condition. The medical opinions were convincing and supported the conclusion that claimant had not sustained permanent impairment or disability resulting from his work. Claimant failed to provide sufficient proof of permanent impairment, despite a persuasive argument upon the limited proof included in the record of this case.

The commissioner concluded Westling failed to establish either a permanent physical impairment or permanent disability caused by the January 5, 2006 injury.

Westling filed a petition for judicial review. The district court saw some merit in Westling's argument that the surgery may have resulted in some permanent impairment under the *Guides*' definition of impairment, but concluded the commissioner did not make an error of law in making a contrary finding. The district court noted the opinions of Drs. Shook and Hough were "uncontroverted, well-supported medical evidence . . . that Westling's work-related injury and resultant surgery was not a cause of a permanent impairment or disability."

The court of appeals affirmed the district court and the commissioner. Westling requested further review, which we granted.

## II. Scope of Review.

We review an appeal of a workers' compensation decision under the standards set forth in chapter 17A of the Iowa Code. *Xenia Rural Water Dist. v. Vegors*, 786 N.W.2d 250, 252 (Iowa 2010). We apply the

standards "to determine whether the conclusions we reach are the same as those of the district court." *Andover Volunteer Fire Dep't v. Grinnell Mut. Reins. Co.*, 787 N.W.2d 75, 79 (Iowa 2010). If we reach the same conclusion as the district court, we affirm, but if we reach a different conclusion, we reverse. *Id.*

We defer to the agency's interpretation of a statute when the legislature has clearly vested the agency with the authority to interpret a statute. *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 11 (Iowa 2010). When the legislature has clearly vested the agency with such authority, we "will only reverse a decision of statutory construction which is irrational, illogical, or wholly unjustifiable." *Xenia*, 786 N.W.2d at 252; *see also* Iowa Code § 17A.19(10)(*l*). If, however, the agency has not clearly been vested with such authority, we review questions of statutory interpretation for correction of errors at law. *Xenia*, 786 N.W.2d at 252; *see also* Iowa Code § 17A.19(10)(*c*).

In this case, we are reviewing the commissioner's interpretation of Iowa Code section 85.34(2), which deals with permanent partial disability compensation. An examination of chapter 85 does not reveal any basis for concluding that the legislature clearly vested the workers' compensation commissioner with authority to interpret the subsection at issue. Therefore, we review the commissioner's statutory interpretation for correction of errors at law. *See* Iowa Code § 17A.19(10)(*c*).

When a claim is made that the commissioner's decision is not based upon substantial evidence, we must determine if a factual determination made by the commissioner "is not supported by substantial evidence in the record before the court when that record is viewed as a whole." *Id.* § 17A.19(10)(*f*). Merely because we may draw different conclusions from the record does not mean the evidence is

insubstantial. *Arndt v. City of Le Claire*, 728 N.W.2d 389, 393 (Iowa 2007).

### III. Discussion and Analysis.

**A. Determining Permanent Disabilities Generally.** Westling contends that the commissioner erred in finding no physical impairment resulted from the injury in this case and that this erroneous finding also rendered erroneous the determination that no permanent disability resulted. Westling notes the definition of permanent impairment in the *Guides* includes permanent derangement of bodily structures. Contending it is indisputable that the agency record established his shoulder surgery resulted in permanent derangement of the structures in and around his shoulder, Westling posits the commissioner could not find, on this record, that no permanent physical impairment resulted from the injury.

Iowa Code section 85.34 governs the award of compensation for permanent disabilities. Specifically, section 85.34(2) governs compensation for permanent partial disabilities. Sections 85.34(2)(*a*) through (*t*) govern permanent partial disability payments for scheduled injuries. *St. Luke's Hosp. v. Gray*, 604 N.W.2d 646, 653 (Iowa 2000). The commissioner determines the compensation for scheduled injuries based on the impairment of an injured worker's body function. *Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 15 (Iowa 1993). In making this determination, the commission's rules allow the commissioner to use the *Guides*. Iowa Admin. Code r. 876—2.4. The rule states:

> The Guides to the Evaluation of Permanent Impairment, Fifth Edition, published by the American Medical Association are adopted as a guide for determining permanent partial disabilities under Iowa Code section 85.34(2) "*a*" to "*s.*" The extent of loss or percentage of permanent impairment may be determined by use of the

Fifth Edition of the guides and payment of weekly compensation for permanent partial scheduled injuries made accordingly. Payment so made shall be recognized by the workers' compensation commissioner as a prima facie showing of compliance by the employer or insurance carrier with the foregoing sections of the Iowa workers' compensation Act. Nothing in this rule shall be construed to prevent the presentations of other medical opinions or guides or other material evidence for the purpose of establishing that the degree of permanent disability to which the claimant would be entitled would be more or less than the entitlement indicated in the Fifth Edition of the AMA guides.

*Id.*

The *Guides* are not conclusive evidence on the extent of permanent impairment. *Lauhoff Grain Co. v. McIntosh,* 395 N.W.2d 834, 839 (Iowa 1986). The agency's rule specifically allows the commissioner to consider other competent medical evidence when determining the percentage of partial permanent disability resulting from a scheduled injury. *See* Iowa Admin. Code r. 876—2.4. The commissioner does not consider loss of earning capacity in determining a partial permanent disability for a scheduled member. *Mortimer*, 502 N.W.2d at 15. Thus, in a case involving a scheduled injury, if there is a causal connection between a work-related injury and a functional impairment, the statute allows the commissioner to find a partial permanent disability.

The legislature devised a different standard for determining the extent of partial permanent disability for unscheduled injuries. When determining the extent of permanent disability resulting from unscheduled injuries, the commissioner must assess whether the injury diminished the injured worker's earning capacity. Iowa Code § 85.34(2)(*u*). The Code provides:

In all cases of permanent partial disability other than those hereinabove described or referred to in paragraphs "*a*" through "*t*" hereof, the compensation shall be paid during the number of weeks in relation to five hundred weeks as the

reduction in the employee's earning capacity caused by the disability bears in relation to the earning capacity that the employee possessed when the injury occurred.

*Id.*

We have referred to the reduction in earning capacity as "industrial disability." *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 192 (Iowa 1980). In determining industrial disability, the commissioner must look at the injured worker's "age, education, qualifications, experience and his inability, because of the injury, to engage in employment for which he is fitted." *Olson v. Goodyear Serv. Stores*, 255 Iowa 1112, 1121, 125 N.W.2d 251, 257 (1963). The commissioner also considers the claimant's functional impairment in determining the extent of industrial disability. *Mortimer*, 502 N.W.2d at 14; *Simbro v. Delong's Sportswear*, 332 N.W.2d 886, 887 (Iowa 1983). Although functional disability is a factor in the determination of work-related industrial disability, it is not a conclusive factor. *McSpadden*, 288 N.W.2d at 192. Thus, proof of an unscheduled injury alone will not support an award of partial permanent disability. The claimant must prove the work-related injury caused an industrial disability.

**B. Westling's Partial Permanent Disability Claim.** As we have noted, Westling contends that he conclusively proved the shoulder surgery caused permanent physical impairment and that the commissioner's finding to the contrary is not supported by substantial evidence. He bases his contention on the premise that the *Guides* defines "impairment" to include an anatomical derangement of the body. Believing the commissioner erred in finding no work-related physical impairment, Westling further contends the commissioner's determination that the injury caused no industrial disability must also be reversed.

Westling's arguments on appeal fail for two reasons. First, the record did not conclusively establish that the shoulder surgery caused permanent physical impairment. The evidence on this issue was mixed. Although the surgeon's surgical note provides evidence that structures in Westling's shoulder were removed and permanently altered, this evidence did not stand alone. The record also contains the surgeon's opinion that Westling did not suffer any permanent physical impairment because of the surgery and the opinion of the physician who performed the independent medical examination who opined Westling did not suffer any permanent impairment because of overuse while working for Hormel. As the *Guides* are not conclusive evidence as to the definition of permanent physical impairment or the extent of impairment, the commissioner did not err in finding on this record that Westling failed to prove permanent physical impairment resulting from the injury.

The second reason Westling's argument on appeal must fail is that he failed to establish that the commissioner erred in finding the work-related injury did not cause industrial disability. Even if Westling had proved to the satisfaction of the commissioner that the structural derangement of the shoulder resulting from the surgery caused a permanent physical impairment, it would have been to no avail. The commissioner's separate determination that the work-related injury produced no loss of earning capacity was supported by substantial evidence.

Our review of the record leads us to the same conclusion reached by the court of appeals. It is not the role of the district court or the appellate courts to reweigh the evidence. *Arndt*, 728 N.W.2d at 394–95.

Westling raises further issues on appeal. We need not reach these issues because his further issues depend on us accepting his claim that

the commissioner erred when he failed to find a causal relation between Westling's January 5, 2006 injury and his claimed disability.

## IV. Disposition.

We agree with the district court and the court of appeals that the commissioner did not err in determining Westling suffered no permanent physical impairment or permanent disability as a consequence of a work-related injury. Therefore, we affirm the decision of the court of appeals and the judgment of the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF THE DISTRICT COURT AFFIRMED.**

All justices concur except Mansfield, J., who takes no part.