# IN THE COURT OF APPEALS OF IOWA

No. 19-2077
Filed January 21, 2021

**ISAAC MILLANES-ORTIZ,**
Plaintiff-Appellant,

**vs.**

**LOYD ROLING CONSTRUCTION and GRINNELL MUTUAL REINSURANCE,**
Defendants-Appellees.
_____

Appeal from the Iowa District Court for Polk County, David Nelmark, Judge.


The claimant appeals the district court's ruling affirming the denial of permanent partial disability benefits by the Workers' Compensation Commissioner. **AFFIRMED.**


Andrew W. Bribriesco, Bettendorf, for appellant.

Stephen W. Spencer and Christopher S. Spencer of Peddicord Wharton, LLP, West Des Moines, for appellees.


Considered by Doyle, P.J., and Mullins and Greer, JJ.

**GREER, Judge.**

Isaac Millanes-Ortiz (Ortiz) fell at work and suffered injuries that required hospitalization and surgery. While the work injury was not contested, Ortiz's request for permanent partial disability (PPD) benefits was.[1] The Worker's Compensation Commissioner (the commissioner) found that Ortiz suffered no PPD from the fall that occurred while in the course of his employment.[2] With the permanent-disability issue as the focus, Ortiz appeals from the district court affirmance of the final agency decision. We affirm.

**Factual Background and Procedural History.**

Ortiz was hired by Loyd Roling Construction (Roling) in October 2008 to perform various tasks including painting, roofing, driving truck, and feeding livestock. He was paid a salary of $500 per week for his services, plus an occasional cash payment. Ortiz suffered an injury while working on September 28, 2012. He fell approximately twelve feet off a roof, landing on his side. Taken by ambulance to the University of Iowa Hospital, he was evaluated for complaints of chest and left arm pain. Ortiz underwent X-rays of the chest, pelvis, left shoulder, and left upper extremity, as well CT scans of the chest and cervical spine. The scan of his chest revealed left pneumothorax and rib fractures, and the X-rays revealed a mid-shaft fracture of the left humerus with a radial nerve palsy in the left arm. In the trauma clinic, the doctor placed a chest tube as a result of the

[1] Ortiz also claimed another work injury to his leg, but that claim for benefits is not addressed in this appeal.
[2] The decision also awarded temporary total disability benefits and a penalty benefit of $500 and denied requests for medical expenses and alternate medical care.

pneumothorax. A closed reduction with splinting of the humerus fracture was performed, and Ortiz was provided a cock-up splint and physical therapy. After five days in the hospital, he was discharged with therapy instructions.

Ortiz continued to experience discomfort in his arm. Seeking an answer for the pain, he returned to the orthopedics department at the hospital on December 12, 2012, for possible surgical intervention on his left arm. At this visit, Ortiz complained of some left-sided chest, neck, and shoulder pain that started the previous week. Attributing some of his pain to carrying a heavy arm rest around his neck while he walked, the doctor recommended Ortiz stop using that aid while walking. The doctor concluded that surgery was needed to repair the nonunion of the humeral fracture of the left arm. On January 28, 2013, Dr. Lawrence Marsh performed an open reduction and internal fixation surgery on the humeral fracture, inserting a plate and screws. By August 21, 2013, X-rays revealed a healed humeral fracture, which had good fixation. The notes show that Ortiz's radial nerve palsy was also resolving despite his continuing complaints of pain. Ortiz was also treated by Dr. Douglas Sedlacek in October and received injections for pain in his shoulder and left upper extremity. Ortiz reported a "tremendous amount of relief" from the injections.

Roling reached out to Ortiz and offered light-duty work compliant with the restrictions last given by Ortiz's doctors. Ortiz avoided the offer and, when pressed, over-stated his lifting limitations, asserting he could only lift two to three pounds instead of the twenty pounds suggested by the treating doctors. Ortiz never returned to work with Roling.

After Ortiz switched physical therapy providers in the fall of 2013, he reported dramatic improvement in his strength and range of motion. He completed the physical therapy by January 2014.

Dr. Joseph Chen at the University of Iowa Hospital evaluated Ortiz in early 2014. Ortiz continued to complain of pain at each of his doctor appointments, and it was recommended he complete a functional capacities evaluation (FCE) in February 2014. The evaluator, John Kruzich, believed that Ortiz failed to give maximum voluntary effort during evaluation, provided a highly inconsistent effort during the objective testing, and failed the validity criteria. The FCE noted that the pain questionnaires indicated symptom magnification. Likewise, the high pain reports during the exam were inconsistent because there were minimal or no demonstrated pain behaviors. For example, in the Kruzich report, he opined

> [Ortiz] was able to lift on average nearly twice the amount of weight at the conclusion of testing as he was able to lift at the beginning of testing. Presumably the client, if indeed in a significant amount of pain, would lift the same or considerably less weight as testing proceeded and pain levels increased. Similar to the previously mentioned published research concerning the use of this test the only explanation for the substantial variation in the claimant's maximum lifting abilities is abnormal test behavior.

Ortiz saw Dr. Chen again in March after this FCE testing. Again, Ortiz reported intense pain with the use of his left arm. Dr. Chen reviewed the FCE noting "grossly inconsistent effort [by Ortiz] on a variety of scales." When Dr. Chen assessed Ortiz, he noted Ortiz was "in no distress." Strength, coordination, and muscle stretch reflexes were normal in the upper extremities bilaterally. The doctor told Ortiz he had "chronic myofascial left arm pain . . . due to increased central nervous system hyperexcitabiity" that he had to learn to manage but that the pain

should not limit his usual activities. With full range of motion and strength, Dr. Chen found no permanent impairment and instructed Ortiz to return to full work duties with no restrictions. Dr. Chen determined that Ortiz had "no ratable impairment according to AMA[3] Guides to the Evaluation of Permanent Impairment, 5th Edition."

From March until June of 2014, Ortiz worked at a hotel in the Iowa City area. Otherwise, Ortiz's work history after the initial injury is unknown.

In June 2014, Ortiz underwent an independent medical examination (IME) with Dr. Mark Taylor for Ortiz's use in the worker's compensation case. Dr. Taylor discounted the results of the FCE and determined Ortiz had permanent injury from the September 2012 fall. Using the AMA guidelines, Dr. Taylor opined that Ortiz had a left upper extremity impairment rating of sixteen percent and a ten percent permanent disability of the whole body. Dr. Taylor provided permanent impairment ratings as follows: three percent of the left upper extremity for loss of elbow motion; six percent of the left upper extremity for loss of shoulder motion; three percent of the left upper extremity for the sensory deficits of the radial nerve palsy; and four percent of the left upper extremity for the weakness related to the radial nerve palsy. Dr. Taylor also recommended permanent restrictions. Contrary to Kruzich's FCE report addressing Ortiz's abnormal testing behavior, Dr. Taylor believed pain caused Ortiz to perform poorly on the functional examination.

In an opinion letter dated November 20, 2014, Dr. Marsh determined that Ortiz was at maximum medical improvement (MMI) for his work injury. He agreed

---

[3] AMA is an acronym for American Medical Association.

with Dr. Chen that Ortiz had no work restrictions. Future medical treatment was not required. The report also referenced Ortiz's radial nerve injury and his ongoing complaints of pain. Dr. Marsh opined that the radial nerve injury had "improved by objective measures and clinical presentation." As for the pain complaints, the doctor offered that the pain might be consistent with ongoing nerve dysfunction, not necessarily attributable to a radial nerve injury. Yet, Dr. Marsh confirmed "given the good recovery of function and the amount of time that has passed, it is unlikely that any intervention or treatment is likely to change Mr. Ortiz's complaints of possibly neuritic pain." Dr. Marsh discounted the opinions of Dr. Taylor, as Dr. Chen had done in his notes.

Ortiz petitioned for benefits from the Worker's Compensation Division, and in January 2016, a deputy commissioner wrote a detailed thirty-four page arbitration decision. Among other findings, the deputy commissioner found that Ortiz failed to prove a permanent disability arising from his work fall. Notably, the deputy commissioner determined Ortiz was not a credible witness and that the opinions of Dr. Chen and the other treating doctors were more convincing than the IME doctor used by Ortiz. In a final agency decision, the commissioner reached "the same analysis, findings and conclusions as those reached by the deputy commissioner." The decision affirmed all facets of the arbitration decision and found that Ortiz failed to carry his burden of proof that he sustained a permanent disability. Ortiz appealed to the district court,[4] focusing the appeal on the question of the permanent-disability determination.

---

[4] Ortiz first petitioned for judicial review in September 2017. Because of perceived procedural failures involving improper service under Iowa Code section 17A.19(2)

Operating in an appellate capacity, the district court affirmed the commissioner's ruling, finding that substantial evidence supported the finding Ortiz did not sustain a permanent disability and that the decision of the commissioner was not illogical, irrational, or wholly unjustifiable. Yet the district court observed that "it does strike the Court as unusual that very serious injuries of the nature sustained in this case would result in no permanent disability."

Ortiz appeals. He attacks the commissioner's decision from three angles. First, he claims the commissioner erred as a matter of law by only considering the AMA guidelines to determine permanency. Next, Ortiz argues the commissioner misapplied law to fact by failing to consider chronic pain as sufficient evidence of a change in physiological capacity in a scheduled-member case. And finally, because the district court found Ortiz suffered from chronic pain, Ortiz maintains the commissioner's decision to deny permanent disability is not supported by substantial evidence.

**Standards of Review.**

Iowa Code chapter 17A governs judicial review of an agency decision. *See Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012). Under the Act, we may only interfere with the commissioner's decision if it is erroneous under one of the grounds enumerated in the statute and a party's substantial rights have been prejudiced. *See id.*; *see also* Iowa Code§ 17A.19(10). Under Iowa Code section

---

(2016), the case was dismissed. The Iowa Supreme Court reversed the dismissal (and our affirmance of it), finding that emailing the petition to opposing counsel within the ten days was proper service. *Ortiz v. Loyd Roling Constr.*, 928 N.W.2d 651, 652 (Iowa 2019).

17A.19(10), our standard of review depends on the aspect of the agency's decision that forms the basis of the petition for judicial review. *See Meyer v. IBP, Inc.*, 710 N.W.2d 213, 219 (Iowa 2006). If an agency has been clearly vested with the authority to make factual findings on a particular issue, then a reviewing court can only disturb those factual findings if they are "not supported by substantial evidence in the record before the court when that record is reviewed as a whole." Iowa Code § 17A.19(10)(*f*); *see also Meyer*, 710 N.W.2d at 218. This review is limited to the findings that were actually made by the agency, not other findings that the agency could have made. *Meyer*, 710 N.W.2d at 218. When the application of law to fact has been clearly vested in the discretion of an agency, a reviewing court may only disturb the agency's application of the law to the facts of the particular case if that application is "irrational, illogical, or wholly unjustifiable." Iowa Code § 17A.19(10)(*m*); *see also Burton*, 813 N.W.2d at 256.

**Analysis.**

It is undisputed Ortiz suffered a work-related injury and was entitled to temporary disability payments. But Ortiz requests payments for a permanent partial disability because of his chronic pain and the changes sustained in his left arm. He argues he was permanently injured and the commissioner erred by not considering any evidence beyond the AMA guidelines[5] when determining the extent of permanent disability. He contends that had the commissioner considered all of the evidence in the record, there would be a finding of permanent disability.

---

[5] Iowa Administrative Code section 876–2.4 adopts "The Guides to the Evaluation of Permanent Impairment, Fifth Edition, published by the American Medical Association . . . for determining the extent of loss or percentage of impairment for permanent partial disabilities."

*Whether there was error as a matter of law to only apply AMA guidelines and not consider lay testimony about pain.*

To begin, Ortiz frames the legal question before us as one of first impression. He asks "whether a finding of chronic pain in the arm—in and of itself—is legally sufficient to award *at minimum* one percent (1%) permanent disability despite the absence of a numerical rating pursuant to the AMA guidelines." Ortiz urges that the AMA guidelines are merely a guide for disability determinations, and he points to the Iowa Supreme Court's decisions in *Terwilliger v. Snap-On Tools Corp.*, 529 N.W.2d 267, 273 (Iowa 1995), and *Miller v. Lauridsen Foods, Inc.*, 525 N.W.2d 417, 421 (Iowa 1994), which allow for the use of non-AMA evidence to arrive at a functional disability rating.

The parties agree the agency was to decide the functional disability of Ortiz's scheduled injury. And as *Terwilliger* states, "The law requires the commissioner to consider all evidence, both medical and nonmedical, in arriving at a disability determination." 529 N.W.2d at 273. Functional disability is arrived at by determining the loss of physiological capacity of the body part. *Miller*, 525 N.W.2d at 420 (citing *Second Injury Fund of Iowa v. Shank*, 516 N.W.2d 808, 815 (Iowa 1994)). The AMA guidelines are not conclusive evidence on the extent of permanent impairment. *Lauhoff Grain Co. v. McIntosh*, 395 N.W.2d 834, 839 (Iowa 1986). The agency's rules specifically allow the commissioner to consider other competent medical evidence when determining the percentage of permanent partial disability resulting from a scheduled injury. *See Westling v. Hormel Foods Corp.*, 810 N.W.2d 247, 252 (Iowa 2012). In a case involving a scheduled injury, if there is a causal connection between a work-related injury and a functional

impairment, the statute allows the commissioner to find a permanent partial disability. *Id.*

While the commissioner must consider other evidence, the agency does not have to list every fact in the record and explain if it was accepted or rejected. *Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 560-61 (Iowa 2010). Instead the commissioner must provide a decision that is detailed enough to show how conflicting evidence was evaluated. *Id.* The commissioner shall include both "an explanation of why the relevant evidence in the record supports each material finding of fact" and conclusions of law that are "supported by cited authority or by a reasoned opinion." Iowa Code § 17A.16(1). The arbitration decision, affirmed by the commissioner, contained factual detail outside of the AMA guidelines including how the injury occurred and the opinions of Mr. Ortiz's treating doctors. Unlike in *Lauridsen Foods*, where lay testimony was excluded, here the deputy considered all testimony offered. 525 N.W.2d at 417*.*

Ortiz asks that we remand the case back to the commissioner and instruct him to utilize the correct legal precedent. We agree with the district court and find the commissioner applied the appropriate legal standards to the facts and also considered the lay testimony related to the subjective complaints of pain. We decline to overturn the decision under this theory.

*Was there a misapplication of law to fact by failing to consider chronic pain as sufficient evidence of a change in physiological capacity?*

Ortiz next argues that a finding of chronic pain is sufficient per se to show a change in physiological capacity, meaning the commissioner's decision was irrational, illogical, wholly unjustifiable, or otherwise unreasonable, arbitrary, and

capricious. We disagree. A decision is irrational when it is not governed by reason, illogical when it is devoid of logic, or unjustifiable when it has no foundation in fact or reason. *See Sherwin–Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 432 (Iowa 2010). "Functional disability is arrived at by determining the impairment of the employee's body function. This disability is limited to the loss of the physiological capacity of the body or body part." *Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 14 (Iowa 1993). Ortiz argues that courts should look to the plain meaning of physiological loss to determine if pain can support a finding of loss. Yet, Ortiz referenced Taber's Cyclopedic Medical Dictionary's definition as "concerning body function."

The Iowa Supreme Court has addressed the tension between function and complaints of pain in this same context. In *Robbennolt v. Snap-On Tools Corp.*, the court noted that the commissioner is not required to award disability beyond that of the AMA guidelines simply because the claimant is complaining of pain or fatigue. 555 N.W.2d 229, 234 (Iowa 1996) (finding "there is no rule of law that requires an award greater than the impairment rating determined by the AMA guidelines where a claimant makes complaints of pain"). Dr. Chen evaluated Ortiz under the AMA guidelines and found no permanent disability.[6] Furthermore, the question of Ortiz's pain level was disputed. While Ortiz had a medical doctor evaluate his condition, including his pain, other doctors contradicted those conclusions. Dr. Marsh and Dr. Chen both released Ortiz with no restrictions.

---

[6] Following a 2017 amendment, the Iowa Code now states: "[W]hen determining functional disability . . . the extent of loss or percentage of permanent impairment shall be determined solely by utilizing the [AMA guidelines]." 2017 Iowa Acts ch. 23, § 9 (codified at Iowa Code § 85.34(2)(x)).

Arguably, the medical providers believed the subjective pain complaints were not limiting Ortiz's functional capacity. Additionally, the FCE performed by Kruzich indicated symptom magnification leading to credibility questions about Ortiz. Ultimately, Dr. Chen was found credible, and he determined even with complaints of pain Ortiz would not suffer any functional limitation by using his arm normally. The deputy commissioner noted

> Claimant has claimed permanent disability to his left arm, left shoulder, neck, head, and chest, as well as his mental health. Claimant certainly suffered with a fracture of the left humerus, requiring placement of hardware, and a radial nerve palsy injury. However, Dr. Chen opined claimant sustained no ratable impairment as a result of these conditions. Dr. Taylor opined claimant sustained ratable impairment, but did so in spite of FCE findings which rendered examination results questionable. The undersigned is bothered by Dr. Taylor's disregard of the FCE results and the determination of Mr. Kruzich that claimant's FCE results could only be described as demonstrating abnormal testing behavior, with signs of symptom magnification. Mr. Kruzich convincingly rejected Dr. Taylor's assertion claimant's poor FCE performance could be attributable to increased pain complaints. As. Dr. Taylor bases his permanent impairment ratings upon measures subject to manipulation and fails to adequately explain claimant's poor performance at FCE, the undersigned determines the opinions of Dr. Taylor are entitled to little weight. Having provided greater weight to the opinion of Dr. Chen, in conjunction with the invalid FCE findings of Mr. Kruzich, it is determined claimant has failed to prove he sustained permanent disability to his left arm.

The deputy commissioner was in the best position to evaluate all this evidence and make credibility findings. And there were red flags supporting a lack of effort and candor by Ortiz. After the medical provider developed his work restrictions, Roling offered light duty work to Ortiz commensurate with those restrictions. Ortiz refused the work and then exaggerated the medical restriction on lifting of twenty pounds, telling Roling he could only lift two pounds. The FCE test referenced his failure to give maximum effort and offered inconsistent findings

for a pain condition where he lifted more towards the end of the testing as opposed to the beginning, making it difficult to confirm Ortiz's actual function. Medical providers noted the "overt and magnified pain behaviors and the failed validity criteria on the FCE." And the deputy commissioner was able to see, hear, and evaluate the testimony of Ortiz in real time. We do not find the commissioner's decision to be irrational, illogical, wholly unjustifiable, or otherwise unreasonable, arbitrary, and capricious, and we see no reason to overturn their determination.

*Substantial evidence test.*

Finally, Ortiz argues substantial evidence does not support the commissioner's decision to deny permanent disability. In making this argument, Ortiz again relies on his chronic pain complaints to overcome the AMA guideline finding by Dr. Chen. The possibility of drawing two inconsistent conclusions from the same evidence does not prevent the agency's decision from being supported by substantial evidence. *Henry v. Iowa Dep't of Job Serv.*, 391 N.W.2d 731, 734 (Iowa Ct. App. 1986). As discussed above, the treating physicians and the FCE evaluator offered opinions supporting the commissioner's findings. We read the agency's findings broadly and liberally with an eye to upholding rather than defeating its decision. *See IBP, Inc. v. Al–Gharib*, 604 N.W.2d 621, 632 (Iowa 2000). And, we give deference to the commissioner's credibility determinations. *Broadlawns Med. Ctr. v. Sanders*, 792 N.W.2d 302, 306 (Iowa 2010).

"[F]acts determined by the . . . commissioner have the same effect as a jury verdict; and we may not interfere with such findings where there is a conflict in the evidence or when reasonable minds may disagree as to the inferences to be drawn from the evidence . . . ." *Langford v. Kellar Excavating & Grading, Inc.*, 191 N.W.2d

667, 668 (Iowa 1971). As the district court correctly concluded, the deputy not only considered Dr. Chen's determination of no ratable impairment but also his other opinions about Ortiz's condition. No restrictions were given to Ortiz, and no future treatment was necessary. The deputy gave great weight to the FCE report and concluded that unless corroborated by the evidence, Ortiz's testimony was entitled to little weight. We find substantial evidence supports the commissioner's determination. *See Schutjer*, 780 N.W.2d at 557-58 ("Our assessment of the evidence focuses not on whether the evidence would support a different finding than the finding made by the commissioner, but whether the evidence supports the findings actually made."). We find substantial evidence supports the finding of no permanent disability.

For all of the reasons developed above, we affirm the commissioner's ruling.

**AFFIRMED.**